# IN THE SUPREME COURT OF IOWA

No. 07–0142

Filed July 10, 2009

**STATE OF IOWA,**

    Appellee,

vs.

**KEVIN DEMALE JOHNSON,**

    Appellant.

---

Appeal from the Iowa District Court for Woodbury County, Michael S. Walsh (motion to dismiss) and Duane E. Hoffmeyer (trial), Judges.

Defendant appeals convictions following a bench trial claiming he was tried in violation of the Interstate Agreement on Detainers and that there was insufficient evidence to support his convictions. State cross-appeals claiming a determination of defendant's habitual offender status should be bifurcated from the guilt phase of trial. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Tod J. Deck, Sioux City, for appellant, and Kevin Johnson, Anamosa, pro se.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, Patrick Jennings, County Attorney, and Jill Pitsenbarger, Assistant County Attorney, for appellee.

**HECHT, Justice.**

A defendant appeals his conviction following a bench trial on two separate class "D" felony charges: failure to register as a sex offender (second offense) and failure to appear at trial. Although the defendant was charged as a habitual offender, the district court rejected, without holding a separate hearing, the State's claim as to defendant's habitual offender status. On appeal, the defendant contends his trial was not held within the time limit imposed under the Interstate Agreement on Detainers (IAD) and claims the district court erred in denying his motion to dismiss. Alternatively, the defendant contends there was insufficient evidence to support his convictions. The State cross-appeals asserting the district court erred in failing to bifurcate the determination of the defendant's habitual offender status from the guilt phase of trial. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural Background.

On September 9, 2005, Kevin Demale Johnson was charged with various criminal offenses.[1] Johnson was arraigned on those charges on September 29, 2005. Attorney Peter Monzel was appointed to represent Johnson. A trial date was scheduled for January 10, 2006, and Johnson was released from jail consistent with a bond agreement signed on the date of arraignment.[2]

Monzel had several in-person and telephonic contacts with Johnson in the weeks following the arraignment. The last of these

---

[1]Johnson was charged with robbery in the second degree, assault while participating in a felony, and willful injury. As these charges and the subsequent conviction for assault are not at issue on this appeal, we need not discuss them further.

[2]Johnson was informed of his responsibilities under the bond agreement before he was discharged.

contacts occurred on December 12, 2005, when Monzel informed Johnson of his intent to seek a continuance of the trial date. Monzel advised Johnson that a new trial date would not be determined until the January 4, 2006 pretrial conference was concluded.[3]

On or about December 23, 2005, Johnson gathered his possessions and vacated his apartment on Jackson Street in Sioux City, Iowa. After vacating the apartment, Johnson apparently stayed several days in motel rooms and at his mother's Sioux City home. Johnson was formally evicted from the Jackson Street apartment. A writ of removal was issued on December 23, 2005, and when the apartment manager entered the apartment on December 27, 2005, she found the abode completely empty of Johnson's possessions and vacant of residents.[4] On December 28, 2005, Officer Jay Fleckenstein of the Sioux City Police Department visited the premises and concluded Johnson had vacated the apartment.[5]

On January 3, 2006, Monzel filed a motion for continuance consistent with his discussions with Johnson. Monzel was unaware at

---

[3]Johnson contends he was never informed of the date of the pretrial conference or the trial. As more fully discussed below, the record supports a finding that Johnson was fully aware of both dates.

[4]Johnson contends he was completely unaware of the eviction proceedings and that he left the apartment temporarily to spend the holidays with his family. We find no other support in the record for Johnson's claim that he was unaware of the eviction proceedings or for his claim that he did not intend to permanently vacate the apartment.

[5]Commencing on February 2, 2002, Johnson was required to register as a sex offender each time he established a new residence address. The purpose of Officer Fleckenstein's visit was to determine if Johnson was residing at the address consistent with his registration. During the December 28, 2005 visit, Fleckenstein concluded Johnson had vacated the Jackson Street apartment and discovered the door locks had been changed by the landlord following the eviction. Officer Fleckenstein returned to the apartment on January 5, 2006 to confirm the apartment was still vacant. Johnson failed to register a new address within the five-day grace period as required by Iowa law. *See* Iowa Code § 692A.3 (2005). As he was then on probation for an earlier failure-to-register offense, Johnson was consequently charged with failure to register as a sex offender (second offense). *See id.* § 692A.7(1).

that time of the fact that Johnson had departed Iowa on January 3, 2006 in a car headed for Arizona.[6]   The motion for continuance was never considered by the district court, as Johnson failed to appear at the January 4 pretrial conference.[7]   On January 13, 2006, after being informed that Johnson was no longer residing at the Jackson Street apartment, the Woodbury County attorney charged Johnson with failure to register as a sex offender (second offense) because he had failed to register at a new address or as a transient within five days after vacating his old residence as required by Iowa Code section 692A.3. *See* Iowa Code § 692A.7(1) (2005).

Johnson claims he arrived in Arizona on January 8 or 9.  Shortly after arriving in Arizona, Johnson was arrested for attempting to elude police.[8]   He was subsequently convicted and sentenced on that charge to serve eighteen months in an Arizona prison.  While imprisoned in Arizona, Johnson was notified of a detainer lodged against him for failure to register in Iowa as a sex offender (second offense).  On April 5, 2006, Johnson executed an "Arizona Department of Corrections Agreement on Detainers–Form II" requesting a "Final Disposition be made on . . . indictments, information or complaints now pending."  Johnson's request under the IAD for final disposition of the Iowa charges listed the following

---

[6]According to Johnson, the trip arose rather spontaneously after he received a call indicating his father "had started doing drugs again" and Johnson needed to "come down and pick him up."  Monzel had previously made Johnson fully aware of (1) the January 4 pretrial conference, (2) the January 10 trial date, and (3) Johnson's obligations under the bond agreement.  Despite this awareness, Johnson elected to leave the State of Iowa in clear violation of the bond agreement one day before his pretrial conference and one week before the scheduled start of trial.

[7]A court order filed on December 28, 2005 required Johnson's attendance at the pretrial conference.  Johnson failed to appear at the January 4 pretrial conference and the January 10 trial.

[8]Johnson testified he was arrested two or three days after arriving in Arizona.  Although the date of Johnson's arrest is not clear from the record, a determination of the date is not essential to our analysis of the issues presented in this appeal.

offenses: failure to appear for the January 10 trial (case number FECR053494), failure to appear for the January 4 pretrial conference (case number FECR053492), failure to register as a sex offender, and other criminal charges unrelated to this appeal. However, at the time Johnson completed the IAD form II, the only pending "indictment, information or complaint" relevant to this appeal was the one charging him for failure to register as a sex offender (second offense).[9]

The Arizona Department of Corrections notified the Woodbury County attorney's office by letter of Johnson's request for final disposition of the charges. The letter correctly informed the State of Iowa that failure to act on the untried Iowa charges within the time constraints of the IAD would result in the dismissal of the charges against Johnson. A copy of Johnson's IAD form II was attached to the letter which was received in the Woodbury County attorney's office on April 14, 2006.

After receiving the letter, an assistant Woodbury County attorney executed IAD forms notifying the Arizona Department of Corrections of the State of Iowa's intention to take custody of Johnson. Johnson was transported from Arizona to Sioux City, Iowa, where he was booked and jailed on June 2, 2006. On June 5, Johnson was charged with failure to appear at the January 4 pretrial conference and the January 10 trial. Monzel withdrew from his representation of Johnson on June 15, 2006, as he anticipated being called to testify in Johnson's trial, and replacement counsel was appointed.

---

[9]While the district court had issued bench warrants for Johnson's arrest for failure to appear at pretrial conference and for failure to appear at trial, the charges were not filed by the county attorney until June 5, 2006, three days *after* Johnson had been returned from Arizona to Iowa by law enforcement officers. Under the IAD, "[a]ny request for final disposition made by a prisoner . . . shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner . . . ." Iowa Code § 821.1, art. III(*d*).

On June 29, 2006, Johnson was arraigned on three charges which are the subject of this appeal: (1) failure to register as a sex offender (second offense), (2) failure to appear at the January 4 pretrial conference, and (3) failure to appear at the January 10 trial. Johnson pleaded not guilty on all counts, and trial was set for August 22, 2006.[10] On August 4, 2006, Johnson executed a waiver of his right to be tried within ninety days after the information was filed. *See* Iowa R. Crim. P. 2.33(2)(*b*). Notably, the waiver made no reference to a waiver of time limitations under the IAD.

On August 15, 2006, the prosecutor and Johnson's counsel orally agreed to continue the trial to October 31, 2006. This new date for the commencement of trial was 200 days after Johnson's IAD notification was received by the Woodbury County attorney. The district court granted the continuance in an order that did not disclose the court's rationale for granting the continuance.

On October 24, 2006, after the 180-day time limit for trying Johnson had expired under the IAD, Johnson, his attorney, and the prosecutor, agreed to another continuance and the court entered an order continuing the trial to December 12, 2006. This order cited the unavailability of a witness as the reason for granting the continuance of the trial scheduled for October 31, 2006.[11]

---

[10]The trial was scheduled to commence 130 days after the Woodbury County attorney received Johnson's IAD notification. Under the IAD, criminal charges shall be dismissed if the defendant is not brought to trial within 180 days after the defendant causes to be delivered to the prosecuting officer and the appropriate court written notice of a request for final disposition of the charges unless for good cause in open court the trial is continued. *See* Iowa Code § 821.1, art. III(*a*).

[11]The record suggests another plausible reason for granting the continuance was to allow Johnson to avoid a second jury trial in front of the same jury panel that found him guilty on October 26, 2006 of various other criminal charges unrelated to this appeal.

On November 8, 2006, Johnson filed a written waiver of his right under the IAD to be tried within 180 days. Notably, the waiver was filed 208 days after Johnson demanded a timely final disposition of the Iowa charges under the IAD. Soon thereafter, Johnson's counsel filed a motion to dismiss the charges on the ground the State had failed to timely try Johnson as required by the IAD. Johnson filed a pro se motion to dismiss asserting arguments substantially similar to those made in the motion filed by his counsel. The State resisted, and the court denied both motions. The district court concluded the August 15, 2006 continuance was not in compliance with the IAD, but that the October 24, 2006 continuance met the requirements of the IAD and operated as a valid waiver of Johnson's right under the IAD to a timely trial despite the fact the continuance was granted after the IAD deadline had passed.

A bench trial on the charges commenced on December 12, 2006. Two days later, the district court filed its "Findings of Fact, Conclusions of Law, Verdict and Order." Johnson was convicted for failure to register as a sex offender (second offense) and for failure to appear at trial, but he was acquitted for failing to appear at the pretrial conference. In the same order, the court concluded the State had failed to prove Johnson was a habitual offender. The court did not hold a separate hearing on the habitual offender issue before entering the order adjudicating that issue.

On December 18, 2006, the State filed a motion to establish Johnson's habitual offender status. The State's motion asserted the determination of whether Johnson was a habitual offender should have been bifurcated from the guilt phase of trial. At the subsequent sentencing hearing, the district court heard arguments on the State's motion, denied the motion, reaffirmed its prior ruling on Johnson's

status as a habitual offender, and concluded Iowa Rule of Criminal Procedure 2.19(9) does not require bifurcation of the adjudication of a defendant's habitual offender status if the related criminal charges are tried in a bench trial. Johnson was sentenced to two consecutive five year sentences. Johnson appeals, contending the district court erred in its ruling on the motions to dismiss, and claiming the evidence is insufficient to support his convictions. The State asserts in support of its cross-appeal that the district court erred in failing to bifurcate the determination of habitual offender status from the guilt phase of the trial.

## II.    Scope of Review.

This appeal presents three issues for our review: (1) whether the district court erred in its ruling on the motions to dismiss, (2) whether the evidence is sufficient to support Johnson's convictions, and (3) whether the district court erred in interpreting a statute.

We review the district court's ruling on a motion to dismiss for correction of errors at law. *State v. Widmer-Baum*, 653 N.W.2d 351, 354 (Iowa 2002).

We review sufficiency of evidence claims for correction of errors at law. *State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008). If the court's findings are supported by substantial evidence, we will not disturb the findings on appeal. *Id.* Evidence is substantial if, when viewed in the light most favorable to the State, it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

Finally, we review the district court's interpretation of a statute for correction of errors at law. *State v. Green*, 680 N.W.2d 370, 372 (Iowa 2004).

**III.  Discussion.**

**A.  The Purpose of the IAD.**  The IAD is codified at Iowa Code chapter 821.  Iowa Code §§ 821.1–.8.  Forty-eight states, the District of Columbia, and the federal government are parties to the agreement.[12] *Widmer-Baum,* 653 N.W.2d at 354.  The IAD creates uniform procedures for the efficient disposition of charges against a prisoner held in one jurisdiction and wanted in another jurisdiction on untried criminal charges.  *Id.* (citing Iowa Code § 821.1, art. I).  It is undisputed that the IAD applies in the present case as Johnson was being held in Arizona, and he was wanted on other untried charges in Iowa.

In *Widmer-Baum,* we explained the purpose of the IAD.  *Id.* (outlining the history of the IAD as adopted by Iowa); *see also United States v. Mauro,* 436 U.S. 340, 349–52, 98 S. Ct. 1834, 1842–43, 56 L. Ed. 2d 329, 340–41 (1978) (providing a comprehensive history of the IAD).  As we explained in *Widmer-Baum,*

> [t]he IAD is implicated when a state or jurisdiction wants custody of a prisoner from another jurisdiction and files a detainer or written notice informing the jurisdiction in which the prisoner is serving a sentence to hold the prisoner so the second jurisdiction may try the prisoner for a different crime in its jurisdiction.

653 N.W.2d at 354 (citing *Mauro,* 436 U.S. at 359, 98 S. Ct. at 1846, 56 L. Ed. 2d at 346; *State v. Wood,* 241 N.W.2d 8, 12–13 (Iowa 1976)).  In this case, Iowa informed Arizona of the criminal charges pending against Johnson in Woodbury County so that the IAD's stated purposes would be fulfilled.

The goal of the IAD is to prevent the abuses that historically occurred when jurisdictions lodged detainers against a prisoner, but

---

[12]Iowa and Arizona are both signatories to the agreement.  *See* Iowa Code §§ 821.1–.8; Ariz. Rev. Stat. Ann. § 31-481 (2005).

were not required to act on those detainers. *Id.* at 354–55. In other words, "[t]he purpose of the IAD is to expedite the 'delivery of the prisoner to the receiving state' and to expeditiously dispose of the untried charges 'prior to the termination of [the] sentence in the sending state.'" *Id.* at 355 (quoting *Alabama v. Bozeman,* 533 U.S. 146, 148, 121 S. Ct. 2079, 2082, 150 L. Ed. 2d 188, 192 (2001); Iowa Code § 821.1, art. I).

In outlining the procedures established by the IAD, we explained:

> The IAD is only invoked once a detainer is lodged. The detainer, however, does not require the custodial member to produce the prisoner. Instead, it merely serves to notify the custodial institution that the prisoner is wanted in another jurisdiction, and activates certain requirements under the agreement. Pursuant to the agreement, the authorities of the state or jurisdiction with custody of the prisoner are required to inform the prisoner of the source and contents of the detainer and the prisoner's right to request a final disposition of the underlying charge. At the same time, the agreement permits the requesting state to initiate the process for the prisoner to be transferred to the receiving state to stand trial. Thus, once a detainer is filed, either the prisoner or the receiving state can activate the procedures under the agreement to promptly dispose of the charge.

*Id.* (citations omitted). In compliance with this procedure, Iowa authorities informed Arizona authorities of the Woodbury County charges, Arizona notified Johnson, and Johnson followed the procedures required to demand timely disposition of those charges.

Our decision in *Widmer-Baum* included an extensive discussion of the time limitations imposed by article III of the IAD. *Id.* at 355–56. We explained:

> If the prisoner institutes the process by requesting disposition of the charges pursuant to article III of the agreement, then the prisoner must be brought to trial within 180 days after written notice of the request has been delivered to the prosecutor in the appropriate court of the receiving state. The request by a prisoner under article III is considered to be a waiver of the right to contest extradition,

as well as a consent to appear in any court necessary to effectuate the purposes of the IAD. Thus, article III is a voluntary procedure under the agreement where the prisoner gives up the right to contest extradition in return for an assurance that the charge will be resolved within a period of 180 days.

*Id.* (citations omitted).

The 180-day time limit under the IAD "may be extended because the [detainer] agreement provides that a continuance may be granted for good cause." *Id.* at 356 n.4 (citing Iowa Code § 821.1, art. III(*a*) (2001)). The IAD provision providing for a continuance states: "Provided that for *good cause shown in open court,* the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any *necessary or reasonable continuance.*" Iowa Code § 821.1, art. III(*a*) (emphasis added). If, however, "[t]he prisoner is not brought to trial within . . . the applicable time period prescribed in article III . . . , the court where the charges are pending '*shall enter an order dismissing [the charge] with prejudice,*' and the detainer shall have no force or effect." *Widmer-Baum,* 653 N.W.2d at 356 (citing Iowa Code § 821.1, art. V(*c*) (2001)) (emphasis added).

The IAD can be implemented by the use of optional forms available for use by all jurisdictions. *Id.* at 357 (providing an extensive discussion of the eight IAD forms, as well as the relevant use of each form). As we explained in *Widmer-Baum,* the IAD forms provide an excellent road map of the IAD process as it is generally implemented:

> Under article III, once a detainer is lodged, the warden of the prison uses form I ("Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition") to inform the prisoner of the detainer and the right to request disposition. If the prisoner elects to request disposition, then the prisoner signs form I and form II ("Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints") and

return[s] the forms to the warden. The warden then sends form II, form III ("Certificate of Inmate Status") and form IV ("Offer to Deliver Temporary Custody") to the prosecutor and the appropriate court in the receiving state. Upon receipt of the forms, the prosecutor in the receiving state completes form VII ("Prosecutor's Acceptance of Temporary Custody Offered in Connection With a Prisoner's Request for Disposition of a Detainer") and sends it to the warden. The prosecutor then completes form VI ("Evidence of Agent's Authority to Act for Receiving State") and sends it to the state agreement administrator. Form VI shows the date the prisoner will be transported.

*Id.* (citations omitted). In this case, the optional IAD forms were used by law enforcement authorities in both Arizona and Iowa, and by Johnson.

When evaluating compliance with IAD procedures and their application in any given case, we liberally construe the IAD in favor of the detained prisoner. *State v. Bass*, 320 N.W.2d 824, 827 (Iowa 1982) (citing *Wood*, 241 N.W.2d at 12). With these principles in mind, we now turn our attention to whether the IAD was properly applied in this case.

**B. The IAD and the 180-Day Time Limitation.** Johnson and his attorney filed separate motions to dismiss the Iowa criminal charges, contending the State failed to comply with the time limitation. *See* Iowa Code § 821.1, art. V(*c*) (indicating dismissal of charges is the appropriate remedy when the receiving state fails to try charges within 180 days of receiving a defendant's request for final disposition). Johnson contends the district court erred in denying both motions.

The IAD serves the important purpose of "forc[ing] jurisdictions with detainers outstanding to try the underlying criminal charge within 180 days or be barred." *Wood*, 241 N.W.2d at 12 (citations omitted). One notable exception to the IAD's time requirement is the article III continuance provision. Under this article, a court "for good cause shown in open court, the prisoner or the prisoner's counsel being present, . . .

may grant any necessary or reasonable continuance." Iowa Code § 821.1, art. III(*a*). If a defendant is not tried within 180 days after making a request of the state lodging a detainer for a timely final disposition of an information, the district court must dismiss the charges with prejudice, and the detainer shall cease being effective. *Id.* § 821.1, art. V(*c*); *see Widmer-Baum*, 653 N.W.2d at 359 (noting dismissal is required when the IAD's time limitation has expired).

A broad array of constitutional and statutory rights protecting defendants in criminal cases may be waived. *See New York v. Hill*, 528 U.S. 110, 114, 120 S. Ct. 659, 663–64, 145 L. Ed. 2d 560, 566 (2000). The United States Supreme Court has concluded defendant's counsel's agreement to a trial date outside of the 180-day limitation period is permitted under the IAD and can amount to a waiver of any IAD objection by a defendant. *Id.* at 114–15, 120 S. Ct. at 664, 145 L. Ed. 2d at 566–67. In *Hill*, the defendant's counsel agreed to a trial date outside of the 180-day time limitation. *Id.* at 112–13, 120 S. Ct. at 663, 145 L. Ed. 2d at 565–66. The Supreme Court reasoned the parties' agreement was sufficient to effect a waiver of Hill's right to be tried within 180 days under the IAD. *Id.* at 114–15, 120 S. Ct. at 664, 145 L. Ed. 2d at 566–67. Contrasting agreed-upon continuances from those resisted by the defendant, the Supreme Court concluded the terms of the IAD do not "overcome the ordinary presumption that waiver is available." *Id.* at 116, 120 S. Ct. at 665, 145 L. Ed. 2d at 567–68. In denying Johnson's motions to dismiss, the district court correctly relied on the holding in *Hill* to support its conclusion that Johnson's counsel's agreement to a continuance beyond the 180-day time limitation amounted to a waiver of Johnson's rights under the IAD.

The trial of Johnson's case was scheduled for August 22, 2006. That date was well within the IAD time limitation period of 180 days which was set to expire on October 11, 2006. On August 15, 2006, Johnson's counsel and the prosecutor agreed to reschedule the trial to commence on October 31, 2006, a date clearly beyond the limitation period prescribed by the IAD. A second continuance was granted on October 24, 2006, after Johnson's counsel and the prosecutor agreed upon a new trial date of December 12, 2006. Although the record does not disclose that the continuances were agreed to in open court and for good cause, those requirements were waived by Johnson's counsel's agreements to continue the trial to dates more than 180 days after Johnson gave written notice to the Woodbury County attorney of his request for disposition of the charges.[13] We conclude under the circumstances of this case the district court correctly concluded Johnson waived the right to be tried within 180 days by agreeing to a trial date outside of the 180-day time limitation.

**C.    Sufficiency of the Evidence.** Johnson challenges the sufficiency of the evidence supporting his conviction for failure to register as a sex offender (second offense) and his conviction for failure to appear at trial. If the trial court's findings are supported by substantial evidence, we will not disturb the findings on appeal. *Williams*, 695 N.W.2d at 27. Evidence is substantial if, when considered in the light most favorable to the State, it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

1. *Failure to register as a sex offender (second offense).* Johnson signed a sex offender registration form on October 15, 2005 listing his

---

[13]"Scheduling matters are plainly among those for which agreement by counsel generally controls." *Hill*, 528 U.S. at 115, 120 S. Ct. at 664, 145 L. Ed. 2d at 567.

address as 1626 Jackson Street, Apartment 15, in Sioux City. The form notified Johnson of his obligation to register any change of that address within five days of such change and informed him that " '[r]esidence' means the place where a person sleeps, which may include more than one location, and may be mobile or transitory, including a shelter or a group home." *See* Iowa Code § 692A.1(8). Johnson was evicted from the apartment, and the evidence is overwhelming that by December 23, 2005 the dwelling was empty of his possessions. The record conclusively shows that Johnson did not register his new address or register as transient within five days after that date.

Johnson contends he had not abandoned his residence in Sioux City, planned to return there to live after his trip to Arizona, and therefore was not required to register a new address. We find no support for this contention in the record as Johnson was evicted from the Sioux City address, and he removed his belongings from the residence prior to December 23.

Johnson also contends he had not chosen a new address after leaving Sioux City, so he was under no obligation to register anew. Iowa Code section 692A.3(4) required Johnson, as a person required to register, to notify the sheriff of Woodbury County within five days of changing his residence to a location outside Iowa. Because the definition of "residence" under the statute broadly includes places where Johnson would sleep after abandoning his Sioux City residence, he was obligated to notify the sheriff of the change within five days after December 23 even if the new address was mobile or transitory. *See id.* § 692A.1(8). The statute's very broad definition of "residence" is obviously intended to preclude an effort such as Johnson's to avoid the statute's registration requirements by delaying the choice and designation of a new permanent

address. Given the fact Johnson had been in Arizona more than five days before his arrest, we conclude the record when viewed in the light most favorable to the State amply supports his conviction for failing to register as a sex offender (second offense).

2. *Failure to appear at trial.* Iowa Code section 811.2(8) states "any person who, having been released pursuant to this section, willfully fails to appear before any court or magistrate as required shall, . . . if the person was released in connection with a charge which constitutes a felony, . . . be guilty of a class 'D' felony." We have defined "willfully" as a voluntary or intentional violation of a known legal duty. *State v. Osborn*, 368 N.W.2d 68, 70 (Iowa 1985); *see also State v. Tippett*, 624 N.W.2d 176, 177 (Iowa 2001) (if a defendant "acted with knowledge that his conduct was unlawful," then his conduct was "willful").

Johnson contends he neither intentionally nor voluntarily failed to appear for trial on January 10. He claims he was unaware of the trial date and asserts he was under the impression his counsel planned to file a motion for continuance which would result in a delay of the trial until a later date. Johnson further contends the district court erred in its reliance on Johnson's mother's evasiveness, when asked about Johnson's whereabouts, to support a finding that Johnson willfully failed to appear. Johnson also claims his lack of contact with his attorney, Monzel, after December 12, 2005 does not tend to prove the failure to appear was willful. Finally, Johnson asserts he may have been in custody in Arizona by January 10 and was therefore unable to appear even if he had been aware of the trial date and desired to appear. *See United States v. Reed*, 354 F. Supp. 18, 20 (W.D. Mo. 1973) (holding a defendant detained in state custody cannot be "willful" in his failure to appear).

We conclude Johnson's arguments are without merit. The testimony of Johnson's attorney, Monzel, indicates Johnson was made fully aware of the January 10 trial date. The district court's passing reference to Johnson's mother's testimonial evasiveness as to her son's location cannot reasonably be understood as an indication that the district court gave improper weight to such evidence. There is ample evidence of willfulness other than Johnson's failure to contact his counsel during the period between December 12, 2005 and the time of his arrest in Arizona. He left Iowa without court approval in violation of the clear terms of his bond agreement the day before his scheduled pretrial conference after completely vacating his Sioux City apartment. Although Monzel had reviewed the terms of the bond agreement with Johnson at the time of his release from custody, Johnson left Iowa and took a trip to Arizona without making any effort to contact his attorney, the court, or his probation officer. Further, Johnson's attempt to elude police officers in Arizona could reasonably be viewed as evidence that he was fully aware he had left Iowa in violation of his bond agreement and had failed to appear for his scheduled court dates. When the evidence is viewed in the light most favorable to the State, the district court's verdict is supported by substantial and sufficient evidence. We affirm Johnson's conviction for failure to appear at trial.

**D. Habitual Offender Status Determination.** The district court concluded bifurcation of the trial of habitual offender status is required in jury trials, but not in bench trials. Therefore, the district court issued a ruling on Johnson's habitual offender status in its "Findings of Fact, Conclusions of Law, Verdict and Order." The court found the State had failed to meet its burden to prove Johnson was a habitual offender. The State contends in its cross-appeal that the district court erred in failing

to bifurcate the guilt phase of Johnson's trial from the determination of Johnson's habitual offender status.  We agree.

Iowa Rule of Criminal Procedure 2.19(9) provides procedures for the determination of a defendant's habitual offender status.  The rule states:

> *Trial of questions involving prior convictions.*  After conviction of the primary or current offense, but prior to pronouncement of sentence, if the indictment or information alleges one or more prior convictions which by the Code subjects the offender to an increased sentence, the offender shall have the opportunity in open court to affirm or deny that the offender is the person previously convicted, or that the offender was not represented by counsel and did not waive counsel.  If the offender denies being the person previously convicted, sentence shall be postponed for such time as to permit a trial before a jury on the issue of the offender's identity with the person previously convicted.  Other objections shall be heard and determined by the court, and these other objections shall be asserted prior to trial of the substantive offense in the manner presented in rule 2.11.  On the issue of identity, the court may in its discretion reconvene the jury which heard the current offense or dismiss that jury and submit the issue to another jury to be later impaneled.  If the offender is found by the jury to be the person previously convicted, or if the offender acknowledged being such person, the offender shall be sentenced as prescribed in the Code.

Iowa R. Crim. P. 2.19(9).

In *State v. Kukowski*, 704 N.W.2d 687 (Iowa 2005), we explained the appropriate procedure under this rule as follows:

> "If found guilty of the current offense," the defendant is then entitled to a second trial on the prior convictions.  The prior convictions must be proven by the State at the second trial beyond a reasonable doubt, just as the current offense must be established at the first trial.  Generally, the State must prove the prior convictions at the second trial by introducing certified records of the convictions, along with evidence that the defendant is the same person named in the convictions.  The State must also establish that the defendant was either

represented by counsel when previously convicted or knowingly waived counsel.

704 N.W.2d at 691 (citations omitted).

In *Kukowski,* we recognized the guilt phase of a defendant's trial must be separated from a determination of a defendant's habitual offender status. *Id.* The purpose of this bifurcation is to protect a defendant's rights by ensuring a fair trial on the current offense without that trial being muddied by a consideration of the defendant's previous convictions. *Id.* We acknowledge that *Kukowski* involved a jury trial which posed a risk that jurors might inappropriately consider evidence of past crimes in assessing the defendant's guilt for the current charge. *Id.* While our concern over inappropriate consideration of past convictions is lessened in a bench trial, we believe the objective of preventing consideration of the current charge from being muddied by evidence of past crimes remains persuasive. *See id.*

Consistent with the rules of criminal procedure, the State operated under the understanding Johnson's trial would be bifurcated and did not present any conclusive evidence of Johnson's convictions for prior offenses. In accordance with the general procedure explained in *Kukowski,* the State intended to present evidence of Johnson's prior offenses in a separate second proceeding so as to avoid muddying the waters of the trial on Johnson's current offenses. *See id.* We conclude that in the absence of an agreement of the parties to proceed otherwise, the bifurcation procedures explained in Iowa Rule of Criminal Procedure 2.19(9) and in *Kukowski* apply in bench trials and jury trials.[14] We

---

[14]Johnson asserts the State is essentially seeking a new trial on the habitual offender status determination in violation of the constitutional prohibition on double jeopardy. However, a consideration of habitual offender status is merely a determination of whether a sentencing enhancement applies. Therefore, double jeopardy concerns are not implicated. *See State v. Davis*, 258 Iowa 1192, 1195, 140 N.W.2d 925, 926 (1966).

reverse and remand for a consideration of Johnson's habitual offender status.

**IV.    Conclusion.**

We affirm Johnson's convictions for failure to register as a sex offender (second offense) and failure to appear for trial. We conclude the district court erred, however, under the circumstances presented in this case, in failing to bifurcate the determination of Johnson's status as a habitual offender from the guilt phase of the trial. Accordingly, we affirm Johnson's convictions, vacate his sentence, and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except Streit, J., who takes no part.