MANSFIELD, Justice
(dissenting).
I would affirm. I agree with the district court and the court of appeals that Taylor waived her right to a speedy trial under Iowa Rule of Criminal Procedure 2.33(2)(6) (2013). The majority’s treatment of this issue suffers from two flaws. First, it ignores relevant facts — specifically, the facts that the district court and court of appeals relied on in finding waiver. Second, it is conceptually unsound because it confuses the legal issue of whether Taylor’s counsel may have been ineffective with the legal issue of whether Taylor waived speedy trial. Accordingly, I respectfully dissent.
The court’s approach to the facts of this case is, in my view, unfair to the trial court and the State. However, it will have no repercussions beyond this case. The legal problems with this decision may be more lasting. By holding, in effect, that a defendant’s counseled waiver of a right is not enforceable as knowing and voluntary unless the State shows that the waiver was in the defendant’s best interests, this court creates a new and unneeded complication in criminal procedure.
*81 I. The District Court Correctly Found that Taylor’s Signed Proffer Agreement Amounted to a Waiver of Speedy Trial.
The dispositive question on appeal is whether the signed agreement between Taylor and the State amounted to a waiver of speedy trial. When that agreement was entered into on November 12, 2014, the State was also pursuing criminal charges against the foreign student who had allegedly paid Taylor for sex. The agreement served several purposes. First, it enabled Taylor to reduce her pending charges to simple misdemeanors. Second, it required Taylor’s cooperation in the case against the other defendant. Third, the agreement made clear that no disposition of Taylor’s case could occur for a few months because, among other things, an interpreter would need to be arranged for the other defendant’s trial.
Unfortunately, the State did not make the actual agreement part of the record. However, at the December 10 motion to dismiss hearing, the State did introduce testimonial evidence as to what the agreement said. Thus, we still know the agreement’s essentials.
At the hearing, a prosecutor testified that on November 12, she met with Taylor and Taylor’s counsel in the presence of a court reporter to complete a proffer agreement. She explained that a transcript of the verbal discussions was prepared. The prosecutor referred to and quoted from that transcript in her testimony. She also testified that the transcript was signed by both parties to memorialize the actual agreement.
The prosecutor further testified that the agreement required the other defendant’s trial to proceed first with Taylor testifying for the State. Taylor’s case would remain pending, and after the completion of the other defendant’s trial, Taylor would be permitted to plead guilty to two simple misdemeanors in lieu of the pending more serious charges. The prosecutor added,
I didn’t specifically use the word ‘speedy trial,’ but I did point out that it was going to take a number of months for [the other defendant’s] case to proceed, and I made it very clear that [Taylor] would have to cooperate with the State for this proffer agreement to go forward.
Additionally, the prosecutor read aloud the following quotation from the signed transcript:
Q. [By the prosecutor] Ms. Taylor, you’ve had a moment to discuss with your attorney now, do you still want to move forward with this agreement? A. Yes.
Q. Knowing that it could take a few months for these cases to be resolved? Is that a yes? A. Yes.
Q. Thank you.
On this basis, the district court found that Taylor had waived her right to a speedy trial:
Well, what the record shows is that speedy trial would have ran 90 days after the Trial Information was filed on July 28th, 2014, which would have been about October 25th of 2014. The defendant then was here in Story County on November 12, 2014, where she signed a proffer to testify against the other part of this case, the person who hired her, and in exchange it sounds like she is going to plead to two simple misdemean- or offenses and was actually willing to file those guilty pleas on November 12, 2014.
I think what the file here really shows is that even though a speedy trial had maybe technically ran on the 25th of October, the defendant acquiesced to that waiver of speedy trial when she signed a proffer on November 12 of *82 2014. There are multiple reasons why maybe she didn’t want to file a motion to dismiss for speedy trial at that time.... It might have been that counsel wasn’t for sure that the- motion to dismiss would be granted for lack of speedy trial. She wanted to take advantage of the plea agreement. There was lots of discussion it sounds like about the delay, so the defendant and her attorney knew there would be a delay if she signed the proffer, and. she signed the proffer anyway. ...
The court of appeals affirmed. That court éxplained, “At the time Taylor entered into the agreement, she was aware the trial would be further delayed' until after the trial of her codefendant, thus impliedly waiving her right to a speedy trial by agreeing to a delay in the proceedings.”
According to rule 2.33(2)(6),
If a defendant indicted for a public offense has not waived the defendant’s right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good ‘ cause to the contrary be shown.
Iowa R.Crim. P. 2.33(2)(6).
Waivpr is thus one of three exceptions to the mandatory ninety-day speedy-trial deadline embodied in rule 2.33. “Under our rule, if trial does not commence within ninety days from indictment, dismissal is compelled unless the State proves (1) defendant’s waiver of speedy trial, (2) delay attributable to the defendant, or (3) ‘good cause’ for the delay.” State v. Nelson, 600 N.W.2d 598, 600 (Iowa 1999).
Here the State met its burden of establishing waiver. Of course, “[t]he failure of an accused to affirmatively assert his speedy trial rights does not amount to a waiver of those rights.” Ennenga v. State, 812 N.W.2d 696, 701 (Iowa 2012). However, in'this case the defendant did much more than stand by and do nothing. She entered into a signed agreement on November 12 to resolve the pending charges against, her by testifying against the other defendant and pleading guilty to two simple misdemeanors. . This was with the clear understanding and agreement on the record that “it could take a few months for these cases to be resolved.” Although this court’s task would be considerably easier if the State had introduced the actual proffer agreement into evidence at the December 10 hearing, I agree with the district court and the court of appeals that the existing record is sufficient to establish the defendant waived the speedy-trial deadline.
By analogy, in State v. Johnson, defense counsel agreed to a trial date .that was beyond the time limitation of 180 days in the Interstate Agreement on Detainers (IAD). 770 N.W.2d 814, 822 (Iowa 2009). There was no waiver of the IAD deadline per se, and (unlike here) the, defendant was not present for and did not personally enter into the agreement regarding the new trial date. See id. at 822-23. Nonetheless, we found that “under the circumstances of th[e] case the district court correctly concluded Johnson waived the right to be tried within 180 days by agreeing to a trial date outside of’ the 180-day time limitation?’ Id. at 823.
Taylor was personally ■ present and signed off on a trial date that was going to be “a few months” away. This November 12 on-the-record agreement went well beyond “mere acquiescence.” See State v. Zaehringer, 306 N.W.2d 792, 796 (Iowa 1981) (finding that where the defendant went beyond merely failing to object to a trial date/beyond the speedy-trial deadline and also filed various pretrial motions, this *83 was more than mere acquiescence and operated as a waiver).
The majority finds that “the State of-' fered no evidence to meet its burden of demonstrating waiver through the proffer agreement in this case.” This conclusion cannot be squared with the record discussed above.
Furthermore, unlike the majority, I would not penalize the district court for using the word “acquiesced” in its findings. True, we have said that “mere acquiescence” is not enough to establish waiver. See id. at 795. Yet we have also said that speedy trial was not violated when, the defendant “clearly acquiesced in the trial date selected by the district court.” State v. Gansz, 403 N.W.2d 778, 780 (Iowa 1987). Thus, if we are going to split hairs, “acquiescence” is not a problem — “mere acquiescence” is. Under our precedent, “mere acquiescence” means “a failure to object to a trial date beyond the period for speedy □trial.” Zaehringer, 306 N.W.2d at 796. Here we have much more than a failure to object. Instead, as the trial court found, Taylor with the assistance of counsel yer-bally agreed to the timeframe in which her trial would occur and then signed off on the transcript of this verbal agreement.[1]
II. Ineffective Assistance of Counsel Is a Separate Issue from Waiver.
The majority tries to backstop its position on waiver by citing to several things the State did not show at the ^December 10 hearing. For example, the majority criticizes the State for failing to show plea negotiations had commenced prior- to ‘ the expiration of the original speedy trial deadline. The majority further criticizes the State for failing to show Taylor received a net benefit for waiving speedy trial. ■
’• This approach confuses two' issues — (1) whether there was a waiver of speedy trial and (2) whether Taylor’s counsel rendered effective assistance in consenting to the waiver. If the record supports a waiver, as it does here, it is not the State’s burden to show that the waiver was a .good' deal for the defendant. Rather, we generally preserve such questions for postconvietion-relief proceedings (PCR) where the defendant can raise an ineffective-assistance-of-eounsel claim.. Lack of information is a reason to preserve the claim, not to decide it today.
For example, an after-the-fact waiver might have been' a reasonable strategic choice because the State would have been able to show good cause for extension of the speedy trial' deadline if pressed to do so. Moreover, even if with hindsight the State would not have been able to show good cause, the waiver might have been a reasonable1 defense option after considering the plea offered (here two simple misdemeanors) and the risk that a motion to dismiss for failure to comply with speedy trial would not have been successful. Or the waiver might have been a reasonable decision in light of the possibility that other charges could have been-filed against Taylor even .if these "Charges were dismissed.[2] The point is: Without a PCR record, we do not know.
“In determining whether an attorney failed in performance of an essential duty,' *84 we avoid second-guessing reasonable trial strategy.” Everett v. State, 789 N.W.2d 151, 158 (Iowa 2010). “Normally, cases involving issues of trial strategy and tactical decisions require postconviction proceedings to develop the record adequately.” State v. Hopkins, 860 N.W.2d 550, 556 (Iowa 2015).
In short, the majority wrongly shifts the burden to the State to validate the waiver by proving there would have been good cause for a trial delay even if there had been no waiver. This turns ineffective assistance of counsel on its head, forcing the State to prove that Taylor’s counsel was effective, instead of requiring Taylor to prove she was ineffective. See, e.g., State v. McPhillips, 580 N.W.2d 748, 754 (Iowa 1998) (noting that the defendant “has the burden to prove” “counsel failed in an essential duty, and ... prejudice resulted from counsel’s error”). The majority presumes that Taylor’s counsel was ineffective in agreeing to the waiver and then forces the State to prove otherwise.
The majority cites Utter as describing the circumstances under which a speedy trial waiver might be valid. See State v. Utter, 803 N.W.2d 647 (Iowa 2011). In fact, Utter was an ineffective-assistance case, not a waiver case. See id. at 651. In Utter, we found that the record was adequate for us to hold on direct appeal that the defendant’s trial counsel had rendered ineffective assistance of counsel by failing to file a motion to dismiss after the State had violated the speedy indictment rule. Id. at 654-55. We said,
The only way trial counsel’s failure to file a motion to dismiss could have possibly constituted a tactical or strategic decision would have been if counsel had reached an agreement with the State, such that the State would have forgone charging Utter with additional offenses arising from the same incident in exchange for Utter’s waiver of the State’s failure to comply with the speedy indictment rule and guilty plea.
Id. at 654. Significantly, under the “unique facts” of the Utter case, the State was precluded from bringing additional charges. Id. at 655.
Utter is distinguishable here. Unlike in Utter, the record is inadequate for us to determine that good cause for extension of the deadline was absent and therefore that a “violation” of the rule had already occurred as of the date of the alleged ineffective assistance (here November 12). See id. at 654. In addition, on this record one cannot rule out the possibility the State could have brought additional charges against Taylor.
I am troubled by the court’s heightening of the requirements to prove waiver. Even though the defendant was represented by counsel and both the defendant and counsel agreed to a future trial date outside the speedy trial deadline, the court has set aside this agreement because the State failed to prove the agreement was in the defendant’s best interests. Yet the very purpose of defense counsel is to insure that the defendant’s interests are protected. And we have a separate remedy of ineffective assistance when defense counsel fails to do this.
For the foregoing reasons, I respectfully dissent.
WATERMAN, J., joins this dissent.

. Not all rights require the same form of waiver. For example, the right to speedy trial may be waived by defense counsel on the defendant's behalf without the defendant’s express consent. See State v. McPhillips, 580 N.W.2d 748, 756 (Iowa 1998); State v. LeFlore, 308 N.W.2d 39, 41 (Iowa 1981).

. The record before us indicates that the other defendant had admitted to paying Taylor for sex on another occasion a few days earlier.