# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1302
Filed February 11, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Jeffrey Dewayne Davis,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Scott County,
The Honorable John Telleen (Bench Trial) and The Honorable Henry W.
Latham II (Sentencing), Judges.

———————————

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS

———————————

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ. Telleen, S.J., takes no part.
Opinion by Buller, J.

1

**BULLER, Judge.**

Jeffrey Davis appeals his recidivist conviction for domestic abuse assault, contesting the admission of his girlfriend R.H.'s statements after the district court found he violated a no-contact order and persuaded her not to testify. He also asserts error in how the district court handled his prior convictions. Finding the district court correctly admitted R.H.'s statements, and that the court denied both the State and Davis the benefit of a bifurcated trial, we affirm the conviction for domestic abuse without the recidivist enhancement, vacate the recidivist conviction, and remand for further proceedings.

## BACKGROUND FACTS AND PROCEEDINGS

Following a report of domestic violence involving a weapon, police found R.H. outside. She waved police down and identified herself as Davis's girlfriend; the officer thought she looked "really scared and worked up." She told the officer Davis had recently been released from jail on another domestic-violence charge in which she was the victim. And she said that, following an argument, Davis held her down and tried to stab her in the chest with a pair of scissors. The officer observed "scratch cuts—scratch marks and cuts on [R.H.'s] upper chest area."

The officer spotted Davis shortly after speaking with R.H., and the officer ordered Davis to stop. He didn't. The officer attempted to restrain Davis, and a struggle ensued. While grappling, the officer's body camera was knocked off. The officer took Davis to the ground, and the officer felt Davis touch or grab the officer's holstered firearm. The officer moved Davis's hand off his gun only for Davis to attempt to strangle him with the other. The officer felt pain and his breathing was impaired. The officer struck Davis repeatedly and, with R.H.'s help holding one of Davis's arms, the officer was

2

able to handcuff him. During the encounter, R.H. loudly announced: "Jeffrey, what the fuck was you trying to do—you trying to choke the police? You're so ignorant."

The officer arrested Davis, re-equipped his body camera, and spoke to R.H. in more detail. R.H. was emotional and difficult at times to understand, but the gist of what she described was that Davis got upset with her and pushed the scissors into her chest after an argument about Davis's legal troubles. She also showed the officer where the scissors were, and police seized them. And she said that, at some point that night, she had a knife trying to defend herself. Photos admitted at trial showed scratch marks, which the court observed were "perhaps consistent with being scraped with scissors."

Another officer observed that Davis, when arrested, smelled of alcohol, had slurred speech, and appeared to be intoxicated. Officers attempted to obtain medical care for Davis at the hospital, but at first Davis would not give the hospital receptionist his name. He eventually complied and received medical care. When officers were returning him to the squad car to take him to jail, Davis began to physically resist officers, resulting in an abrasion to one officer's hand, between his thumb and index finger.

The county attorney charged Davis with domestic abuse assault—third or subsequent offense, a class "D" felony in violation of Iowa Code section 708.2A(4) (2023); assault on a peace officer causing bodily injury, an aggravated misdemeanor in violation of section 708.3A(3); and interference with official acts resulting in bodily injury, a serious misdemeanor in violation of section 719.1(1)(c). The county attorney also charged the habitual-offender sentencing enhancement in violation of sections 902.8 and 902.9. Davis waived jury and elected a bench trial.

A deputy sheriff served R.H. with a subpoena for trial. She called the county attorney's office about three weeks before the trial date and told a receptionist she didn't want to participate in the prosecution. Jail calls between Davis and R.H. revealed a campaign by Davis intended to dissuade R.H. from testifying. Statements from Davis to R.H. included:

- "Hey, do me a favor. Call up . . . up here, and tell 'em that . . . you don't wanna do that . . . you want to drop everything, okay? I'll be out of here soon." She responded, "I'm not coming to court, that should have been dropped", and later said: "I'll call up there" (presumably referring to the county attorney's office).

- After telling Davis she had been served with a subpoena, he asked her: "Are you coming, or what?" There is some cross-talk between the two, and then he reiterated: "Don't come, okay?"

- A few days later, R.H. told Davis: "If I don't come to court, they're going to arrest me." He told her the county attorney's office "ain't gonna do nothing to you," suggesting they were lying or bluffing about enforcing the subpoena. At one point, R.H. made a reference to telling "the whole damn truth," but she did not elaborate and it's not clear what she meant.

At trial, the assistant county attorney made a professional statement to the court that R.H. had called him and said she was unwilling to testify but willing to go to jail for failing to abide by the subpoena. When R.H. in fact did not appear for trial, the court admitted her statements, finding Davis had forfeited his right to confrontation by wrongdoing.

Davis testified in his defense at trial. The court found him "not remotely credible." And the court observed: "Many of the facts to which

[Davis] testified were convincingly disproven by body cam evidence." He claimed to have never handled scissors that night and said he did not assault R.H. He also denied choking the first officer or reaching for his gun. He denied resisting the officers at the squad car, which the court specifically found was "conclusively disproven by the body ca[m] video." The body cam similarly disproved Davis's claim he did not refuse to provide his name at the hospital. He admitted to prior convictions for domestic abuse assault, felony public intoxication (third or subsequent offense), and felony failure to register as a sex offender (second or subsequent offense).

The court found Davis guilty as charged on the domestic-abuse count; guilty of the lesser-included offense of assault on a peace officer in violation of section 708.3A(4); and guilty as charged on the interference count.

An issue regarding the prior convictions arose at the verdict-reading. Before the State's case in chief, the court had told the parties that it planned to "hear the State's evidence" on the prior convictions in a separate proceeding "at the conclusion of the trial[,] for the enhancement purposes, if I find the defendant guilty." And at the close of the State's evidence, the prosecutor informed the court he had "additional witnesses if this proceeds to that bifurcated stage of the trial." But the second phase of the bifurcated trial never happened. The court instead determined there was sufficient evidence of the prior convictions based on Davis's trial testimony, and the court's written verdict found Davis guilty of the recidivist enhancement on that basis. The assistant county attorney interjected at the verdict-reading to point out that "the defendant is entitled to a bifurcated trial" unless he stipulated to the offenses. When asked how he wanted to proceed, defense

counsel gave an ambiguous response in which he did not clearly request a remedy or ask the court to take specific action.[1]

The court ultimately sentenced Davis to concurrent prison terms. And he appeals.

## DISCUSSION

Davis raises two issues on appeal: a challenge to the admission of R.H.'s statements through forfeiture by wrongdoing and a challenge concerning the prior convictions.

### I.     Forfeiture by Wrongdoing

While a criminal defendant ordinarily has the constitutional right to confront the witnesses against him, he forfeits that right when he engages in wrongdoing intended to prevent the witness from testifying at trial. *See generally Giles v. California*, 554 U.S. 353, 359–61 (2008); *State v. Harper*, 770 N.W.2d 316, 321–22 (Iowa 2009). To invoke this forfeiture doctrine, the State bears the burden to prove by a preponderance of the evidence that the defendant "wrongfully procured the witness's unavailability." *State v. Hallum*, 606 N.W.2d 351, 355–56 (Iowa 2000). Our review is de novo, but we give "weight to the district court's findings of fact because that court had the opportunity to personally assess the credibility of the witnesses." *Id*. at 354. A finding of forfeiture by wrongdoing is not limited to overt "threats, force or intimidation"; it can also be proven by persuasion and control.  *See id*. at 356.

---

[1] As the State observes in its brief, this could raise a "troubling issue of waiver." But, as discussed in this opinion, both parties were disadvantaged by denial of a bifurcated trial. We decline to enforce the waiver rules under these peculiar circumstances.

We have listened to the recorded jail calls ourselves, as well as the district court's summary of them, and we have little trouble concluding the State met its burden here. As the district court put it, the three submitted recordings involved Davis "clearly" trying to "persuade, cajole, sweet talk the complaining witness into not testifying." The court also emphasized that the surrounding context of the calls—initiated by Davis despite the existence of a no-contact order—further demonstrated Davis's intent to prevent R.H. from testifying at trial. We agree, and we note this conclusion is consistent with our unpublished decisions. *See State v. Flowers*, No. 22-1878, 2024 WL 260089, at *2 (Iowa Ct. App. Jan. 24, 2024) (affirming forfeiture by wrongdoing where defendant "convinced" witness and engaged in "persuasion"); *State v. Hols*, No. 22-1485, 2024 WL 1295945, at *3–4 (Iowa Ct. App. Mar. 27, 2024) (same where defendant "encouraged and influenced" the witness to not testify); *State v. Wood*, No. 20-0327, 2021 WL 3895909, at *3–4 (Iowa Ct. App. Sep. 1, 2021) ("threats" and "levers of control," as well as no-contact-order violations); *State v. Campbell*, No. 10-0117, 2013 WL 4011071, at *5–6 (Iowa Ct. App. Aug. 7, 2013) (defendant told witness to evade subpoena and flee, encouraged her not to testify, and suggested the consequences of refusing to testify were "nothing to worry about").

In his appellate brief, Davis seems to suggest that R.H. decided on her own not to testify and that his statements had nothing to do with her refusal to appear for trial. We are not convinced. The recordings do not leave a lot to the imagination: Davis told R.H. to call the county attorney and say she wanted to drop the charges and wouldn't testify, and he told her not to come to court even after she had been served with a subpoena. The State proved it is more likely than not that Davis procured R.H.'s absence, so we affirm the forfeiture-by-wrongdoing ruling.

## II.    Prior Convictions

Davis next argues the court erred in its handling of his prior convictions, as he maintains there was insufficient evidence to prove the prior convictions—including but not limited to evidence Davis was represented by counsel in those proceedings. The State concedes the district court erred but disagrees with Davis's proposed remedy of merely vacating the recidivist enhancement; the State seeks remand and requests the proper bifurcated-trial procedure be followed.

We conclude *State v. Johnson*, 770 N.W.2d 814 (Iowa 2009), controls. Much like in this case, the parties tried that case to the bench, and the court—without notifying the parties—concluded it had enough evidence to enter judgment on the recidivist enhancement when it rendered its bench verdict on the underlying offense. *See id.* at 819. The supreme court reversed, finding failure to comply with the bifurcated-trial process set forth in the rules of criminal procedure required reversal and remand to afford the State the opportunity to prove the enhancement following the proper procedure. *See id.* at 825–26. There is little-to-no daylight between this case and *Johnson*. We therefore deploy the same remedy by vacating the recidivist enhancement and remanding for further proceedings in which the court can afford the State and Davis the bifurcated-trial proceeding or Davis can engage in proper colloquy and stipulate to the prior offense if he so desires. *See* Iowa R. Crim. P. 2.19(8) (the bifurcated-trial procedure); *State v. Harrington*, 893 N.W.2d 36, 45–48 (Iowa 2017) (the colloquy).

## DISPOSITION

We affirm the conviction for domestic abuse assault and the finding of forfeiture-by-wrongdoing, but we vacate the recidivist enhancement and

remand with directions for further proceedings: either the bifurcated-trial procedure contemplated by Rule 2.19(8) or a proper colloquy.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**