**Willie GIBBS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 96794.**

Missouri Court of Appeals, Eastern District.

Feb. 21, 2012.

Timothy Forneris, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., John M. Reeves, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Willie Gibbs (Movant) appeals from the motion court's judgment denying, without an evidentiary hearing, his Motion under Rule 29.15[1] to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing (Rule 29.15 Motion). We affirm.

### Background

Movant was charged in July 2007 with one count of forcible rape, one count of robbery, and two counts of armed criminal action, for events occurring on October 30, 2000. At the time Movant was charged, he was incarcerated in a federal penitentiary in Terre Haute, Indiana. After his transfer to Missouri and subsequent jury trial, Movant was convicted on all counts. The trial court sentenced him as a prior and persistent sexual offender to thirty years on the count of forcible rape, to be served consecutively to the latter three concurrent sentences of thirty years each on the remaining counts, for a total of sixty years

---

1. All rule references are to Mo. R.Crim. P.2010, unless otherwise indicated.

in the Missouri Department of Corrections.

This Court affirmed Movant's conviction and sentence on appeal. *State v. Gibbs,* 318 S.W.3d 249 (Mo.App. E.D.2010) (per curiam). Movant timely filed his motion under Rule 29.15, alleging ineffective assistance of trial counsel and requesting a hearing. The motion court denied his motion without an evidentiary hearing. This appeal follows.

### Standard of Review

Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k). On review, the motion court's findings are presumptively correct. *Castor v. State,* 245 S.W.3d 909, 912 (Mo.App. E.D.2008). The motion court's findings of fact and conclusions of law are clearly erroneous only if the reviewing court, having examined the entire record, is left with the definite and firm impression that a mistake has been made. *Forrest v. State,* 290 S.W.3d 704, 708 (Mo. banc 2009).

### Discussion

Movant argues that the trial court erred in refusing to hold an evidentiary hearing on his two claims of ineffective assistance of counsel. A motion court is not required to grant an evidentiary hearing unless: (1) the movant pleads facts that if true would warrant relief; (2) the facts alleged are not refuted by the record; and (3) the matter complained of resulted in prejudice to the movant. *Dorsey v. State,* 115 S.W.3d 842, 844–45 (Mo. banc 2003).

On a claim of ineffective assistance of counsel, the movant must show first, that counsel's performance was deficient, and second, that the movant was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[T]here is a strong presumption that counsel's conduct was reasonable and effective." *Gill v. State,* 300 S.W.3d 225, 232 (Mo. banc 2009). Furthermore, to demonstrate prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

For the reasons set forth below, we find Movant alleged in his motion facts that either do not entitle him to relief or are refuted by the record, and thus we find no error in the motion court's denial of Movant's motion without a hearing.

### Point I

Movant argues his trial counsel was ineffective for failing to argue or to amend Movant's motion to dismiss, and for requesting continuances without Movant's permission and without a knowledge of the Interstate Agreement on Detainers (IAD). He argues these actions denied him his right to a speedy trial under the IAD, codified in Section 217.490, RSMo. (2010).[2] We disagree.

### IAD Time Limits

The IAD states in Article I that its purpose is "to encourage the expeditious and orderly disposition of [charges against

---

2. Movant's point relied on also implicates the Fourth, Fifth, and Sixth Amendments to the United States Constitution, along with Article 1, Sections 10, 14, and 18(a) of the Missouri Constitution. However, as Movant's argument discusses only his speedy trial rights under the IAD, we limit our analysis to the same.

a prisoner]." Section 217.490.[3] The IAD deals specifically with such "charges emanating from another jurisdiction." Article I. To that end, Articles III and IV of the IAD provide specific time periods within which disposition of charges must take place, depending on the circumstances. *See generally New York v. Hill,* 528 U.S. 110, 112, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (discussing time limits under each article).

Article III addresses the situation in which a prisoner, against whom a detainer has been lodged from another jurisdiction, requests a final disposition of the indictment, information, or complaint. When a prisoner has properly made such a request, "he shall be brought to trial within one hundred eighty days after he shall have caused [such request] to be delivered." Section 1; *Hill,* 528 U.S. at 112, 120 S.Ct. 659. Conversely, Article IV applies when a state has requested custody of the prisoner in order to prosecute pending charges. Section 1. In the event such a request is granted and the prisoner transferred, "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state." Section 3; *Hill,* 528 U.S. at 112, 120 S.Ct. 659.

Both Articles III and IV require dismissal of the case with prejudice in the event a prisoner is not brought to trial within the allowable time limits. Article III, Section 4; Article IV, Section 5. Both articles contain identical exceptions, however, allowing "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Article III, Section 1; Article IV, Section 3.

*Movant's Transfer and Trial Timeline*

On March 19, 2008, the State requested temporary custody of Movant, pursuant to Article IV of the IAD, in order to dispose of the pending charges against Movant in Missouri. On April 22, 2008, the federal penitentiary provided Movant with a "Notice of Untried Indictment," informing him of the charges, which he refused to sign. That same day, the penitentiary issued an "Offer to Deliver Temporary Custody," which it then mailed to the St. Louis City Circuit Attorney on April 23, 2008. Movant was served in Missouri with a warrant on June 10, 2008, but the exact date of his arrival in Missouri is unclear, and Movant does not allege in his motion or elsewhere his arrival date in Missouri.

Movant's trial counsel entered her appearance on June 26, 2008. At a hearing scheduled on July 24, 2008, the case was continued and transferred to another division of the Circuit Court. Trial was then set for September 29, 2008, but Movant's counsel requested a continuance for time to prepare. The trial court set a new date of October 20, 2008, but on October 16, the State requested a continuance because the prosecuting attorney had been called for jury duty, to which defense counsel agreed. The defense subsequently requested two additional continuances, both in order to complete a deposition of the victim. On February 25, 2009, defense counsel requested a continuance due to "attorney conflict," which the trial court granted, setting a new trial date of April 20, 2009. On April 16, 2009, a "scheduling

---

**3.** The entire IAD is codified in Section 217.490, RSMo. (2010). The IAD is divided into nine articles, many of which contain multiple sections. For the sake of clarity, when citing the IAD, we omit the statutory reference and cite only by article and, if applicable, section.

order" was filed, delaying the trial date to August 3, 2009.

On May 11, 2009, Movant filed a pro se motion to dismiss for violation of his right to a speedy trial under the IAD. In it he claimed he had been available for trial and had not authorized any requests for continuances. The trial court's docket sheet deemed this motion a "Request for Speedy Trial." On August 3, 2009, the day the trial commenced, Movant's trial counsel filed a motion to dismiss, arguing the State failed to bring Movant to trial within 180 days after his June 11, 2008, arraignment, in violation of the IAD. The trial court denied this motion, finding that the continuances requested by defense counsel tolled the 180 days, and that the trial in fact took place within 180 days of whatever could be construed as a request for a speedy trial.[4]

*Analysis*

Movant argues that his trial counsel was ineffective for failing to file a motion to dismiss shortly after her entry of appearance on June 26, 2008, and for failing to argue his pro se motion to dismiss filed May 11, 2009, stating the trial court lost jurisdiction on December 23, 2008, at the latest.[5] Movant also states that any continuances obtained by his counsel were so obtained without his permission, and but for the continuances, his case would have been dismissed under the IAD; thus he was prejudiced by counsel's conduct. We disagree.

■ A 180–day time limit is found only in Article III of the IAD. This article applies when a prisoner has made a proper request for final disposition of the matter, to both the court having jurisdiction and to the prosecuting attorney. Article III, Section 1. However, Movant does not argue he made any such request in 2008.[6] There is no IAD provision calling for trial within 180 days of the filing of a detainer or the entry of appearance of defense counsel. Thus Movant's argument that the trial court lost jurisdiction at the latest on December 23, 3008 (180 days after his counsel's entry of appearance), fails.

■ The applicable IAD provision is Article IV, addressing the time limit following a request for transfer by a state, which the State made in this case. Article IV states that the trial should commence within 120 days of the prisoner's arrival. Movant does not allege his arrival date in his motion, nor is it contained in the record. In any event, the first continuance occurred on the first hearing date in the case, July 24, 2008, 43 days after Movant was served with a warrant in Missouri.[7] Movant does not allege facts regarding the reasonableness of this continuance in his

---

4. The trial court presumably was referring to Movant's motion to dismiss filed May 11, 2009, however, the trial court declined to make a finding that any request was actually made.

5. Movant argues that he expected a trial within 180 days of the filing of the State's detainer on March 19, 2008, requiring a trial by September 15, 2008. Movant goes on to argue that at the very least, he should have had a trial by December 23, 2008, which was 180 days after his counsel's entry of appearance on June 26, 2008.

6. Neither does Movant explicitly argue his May 11, 2009, motion to dismiss constituted such a request, though the court's docket sheet calls the motion a "request for speedy trial." Even if this motion constituted a request for speedy trial, the trial commencing on August 3, 2009, was within 180 days of that motion.

7. While it is possible Movant arrived in Missouri before the date he was served with a warrant, it is not possible based on the record that Movant arrived more than 120 days prior to the first trial court continuance on July 24, 2008.

motion, nor does he allege that he or his counsel were not present during the court's ruling on this continuance. See Article IV, Section 3. Thus Movant's motion did not allege facts entitling him to relief under Article IV, and the motion court did not clearly err in denying his motion without a hearing in this respect.

■ Movant's motion alleges only these additional facts: (1) his trial counsel obtained numerous continuances without his permission, and (2) his trial counsel admitted she did not understand the IAD. In determining whether the first entitled Movant to relief, we note that the time limits contained in the IAD are not jurisdictional and may be waived. *See Sams v. State*, 980 S.W.2d 294, 297 (Mo. banc 1998); *Sackman v. State*, 277 S.W.3d 304, 307–08 (Mo.App. E.D.2009). The United States Supreme Court has held that in certain contexts waiver of the IAD time limits by defense counsel is sufficient without requiring direct waiver by the defendant. *Hill*, 528 U.S. at 115, 120 S.Ct. 659. The Court explained that a decision to "agree[ ] to a specified delay in trial," in order for defense to prepare, is one that "only counsel is in a position to assess" and that counsel is permitted to make without the defendant's permission. *Id.*

■ Such was the case here. Movant has not alleged that his trial counsel was in fact prepared for trial, or even that his counsel's requests for continuances were unreasonable. He states only that she was ineffective for seeking continuances without his permission, which under these circumstances, was permissible for her to do in order to prepare. *See Hill*, 528 U.S. at 115, 120 S.Ct. 659. *See also Sams*, 980 S.W.2d at 296. Movant has not shown that a reasonably competent attorney would not have requested or agreed to the continuances here, nor has he shown a probability that the result would have been

different absent his counsel's agreements to continue the case. *See Sams*, 980 S.W.2d at 296.

■ Further, Movant's allegation that his trial counsel was ineffective because she was admittedly unfamiliar with the particulars of the IAD does not change our analysis. Trial counsel's unfamiliarity with IAD only amounts to ineffectiveness when it produces unreasonable conduct. *See Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006) (movant must show "counsel's representation fell below an objective standard of reasonableness"). Her lack of knowledge regarding the IAD time limits alone does not make her requests for continuances themselves unreasonable. *See Sams*, 980 S.W.2d at 297 (finding defense counsel's continuance not unreasonable regardless of whether counsel knew defendant had filed request for speedy trial under IAD Article III, triggering time limit).

Movant's factual allegations that his trial counsel's performance was deficient are refuted by the record, and he raised no other allegations in his motion that entitle him to relief. The motion court did not clearly err in denying Movant's motion without an evidentiary hearing. Point denied.

### Point II

Movant argues his trial counsel was ineffective for failing to object to the State's closing argument, which allegedly constituted improper personalization and prejudiced the jury against Movant. Movant argues that, but for his counsel's failure to object, he would have been acquitted or the court would have granted a mistrial. We disagree.

■ First, we note that the failure to object is presumed a strategic choice by defense counsel, and Movant has the bur-

den to prove the prosecutor's argument "had a decisive effect on the jury's determination." *State v. Perry*, 275 S.W.3d 237, 245 (Mo. banc 2009) (quoting *State v. Wren*, 643 S.W.2d 800, 802 (Mo. banc 1983)).

### Trial Evidence and Closing Argument

The evidence at trial, in the light most favorable to the verdict, showed that in the early morning hours of October 30, 2000, the victim, S.P., was sleeping in her second-floor room with her daughter, when she rolled over in bed and saw a man she did not know standing over her. He pointed a gun first at her, then at her daughter, and told S.P. that he would shoot her if she screamed or moved. S.P.'s daughter was still asleep.

The man took S.P. into her daughter's room, and demanded S.P. give him a necklace she was wearing and any money she had. She complied. The man then removed S.P.'s pants and told her to get down on the floor. He laid on top of her and put the gun to her back. He forced her to have sex with him. He stood up and demanded S.P. give him two rings she was wearing, which she did. He then told her not to tell anyone what had happened or he would return and hurt her.

S.P. woke her daughter, drove to a friend's house, and called the police. She went to the hospital later that morning to be examined. Police also inspected S.P.'s home and later found seminal fluid on the piece of carpeting where S.P. had laid when she was raped. Authorities collected DNA from the carpet, from the underwear S.P. had been wearing that night, and from S.P.'s vaginal smear taken during her hospital examination. All three samples matched Movant's DNA.

During closing argument, the prosecutor stated the following:

There is no doubt your decision in this case is a very important one. It is very important for [S.P.] who, you saw yesterday, clearly lives with this, is clearly still affected by this. And it is important to the citizens of this community whom you as jurors represent. . . .

Now, can you just imagine the terror going through her mind? She has no idea who this man is. He's a complete stranger to her. She can barely even see his face. And he's got a gun. And he points that gun to her little girl's head while her little girl lays sleeping. There is no doubt that there is forcible compulsion in this case.

. . . And because he committed this violent and senseless act against [S.P.], [S.P.] and all the residents of this community are entitled to a guilty verdict.

### Analysis

 A prosecutor may not personalize his or her argument to the jury. *State v. Chambers*, 330 S.W.3d 539, 545 (Mo. App. E.D.2010). This rule exists to avoid tainting the jury's judgment by arousing fear or inciting passion. *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995). One way a prosecutor improperly personalizes is by asking the jury to put themselves in the shoes of the victim or at the crime scene. *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000). However, "an argument is not [improperly] 'personalized' where it does not suggest a personal danger to the jurors or their families if the defendant were to be acquitted." *West v. State*, 244 S.W.3d 198, 201 (Mo.App. E.D.2008) (quoting *State v. Hamilton*, 847 S.W.2d 198, 200 (Mo.App. E.D.1993)). A prosecutor is permitted to make arguments supported by the evidence, and to argue general propositions regarding crime in the community as a whole and the jury's duty to uphold the law. *E.g., Glass v. State*, 227 S.W.3d 463,

474 (Mo. banc 2007) (prosecutor may argue the evidence); *State v. Roberts,* 948 S.W.2d 577, 593 (Mo. banc 1997) (prosecutor may argue general propositions about crime and the jury's duty).

■ Here, the prosecutor's argument was permissible. She summarized the details of the crime itself supported by the evidence, but she did not ask the jurors to imagine it happening to them. She asked the jurors to imagine the terror in the victim's mind as part of relaying the facts and arguing there was forcible compulsion, an element the jury had to find in order to convict. *Cf. Glass,* 227 S.W.3d at 474 (prosecutor's statements asking jury to look at clock for thirty seconds held permissible in order to show enough time to deliberate about killing another person). Her argument also addressed the jury's duty to the community as a whole to enforce the law, and she did not suggest any danger to the jurors or their families if they chose to acquit the defendant. *See State v. Mayo,* 927 S.W.2d 535, 537 (Mo. App. E.D.1996).

■ Furthermore, given the conclusive DNA evidence incriminating Movant in this case, even if the prosecutor's statements were improperly personalized, we could not find it had a decisive effect on the verdict. *See State v. Baller,* 949 S.W.2d 269 (Mo.App. E.D.1997). Thus, Movant did not allege facts establishing his trial counsel's performance was deficient when she failed to object to the prosecutor's closing argument. The motion court did not clearly err in denying his motion without an evidentiary hearing. Point denied.

*Conclusion*

The factual allegations contained in Movant's Rule 29.15 motion are refuted by the record and do not entitle him to relief. The motion court did not clearly err in

denying his motion without an evidentiary hearing.

AFFIRMED.

CLIFFORD H. AHRENS, P.J., and ROY L. RICHTER, J., concur.