

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD84848 |
| | ) | |
| ANTWAN T. CROSBY, | ) | Opinion filed:  October 25, 2022 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE DAVID BYRN, JUDGE**

Division One:  W. Douglas Thomson, Presiding Judge,
Alok Ahuja, Judge, and Edward R. Ardini, Jr., Judge

Antwan Crosby ("Crosby") appeals from his conviction and sentence for kidnapping in the second degree following a jury trial in the Circuit Court of Jackson County. Crosby raises two points on appeal, alleging that the trial court plainly erred in finding that he was a persistent offender and erred by denying his motion to dismiss in which he argued that the State failed to commence his trial within the time limitations mandated by the Interstate Agreement on Detainers ("IAD"). We affirm Crosby's conviction but remand for resentencing.

## Factual and Procedural Background[1]

On September 2, 2017, Victim went out with friends in downtown Kansas City, Missouri. Victim became intoxicated and did not remember leaving the bar. At approximately 3:45 a.m. the following morning, Victim awoke in a car with a man on top of her. Victim requested several times for the man to let her go, but he refused. Victim then offered to give the man money, prompting him to drive her to an ATM where she withdrew $200. Eventually Victim was released and called police.

Victim provided police a description of the man and his vehicle. Officers obtained security footage from the ATM used by the Victim and other downtown surveillance cameras from which Crosby was identified as the man who had attacked Victim. Crosby was arrested and charged with rape in the first degree, sodomy in the first degree, kidnapping in the first degree, and stealing by coercion. The State was granted leave to file an amended information charging Crosby as a prior and persistent offender.

On July 25, 2019, Crosby was sentenced to a prison term in the Kansas Department of Corrections following convictions on unrelated charges in Wyandotte County, Kansas. On September 28, 2019, Jackson County, Missouri, officials lodged a detainer against Crosby. A year later, on September 28, 2020, while still imprisoned in Kansas, Crosby invoked the IAD by submitting to Jackson County officials a request for final disposition of his Missouri charges. Crosby was transferred to Jackson County on October 5, 2020, and his case was set for a jury trial to begin January 11, 2021. On January 6, 2021, the trial court informed the parties that it was necessary to continue the trial date due to the impact of the COVID-19 pandemic. Crosby objected

---

[1] We view the facts in the light most favorable to the jury's verdict. *See State v. Demark*, 581 S.W.3d 69, 73 n.2 (Mo. App. W.D. 2019).

to the delay noting the time limitations contained in the IAD. The trial court acknowledged the applicability of the IAD, but explained that it had no option but to continue the case to March 22, 2021:

> As I mentioned earlier there has been [an] administrative order entered that prohibits any jury trials in Jackson County in January and for that reason, all of the reasons outlined in the administrative order, and the circumstances related to Covid-19 without going into all of those details it is simply not feasible under any circumstances to conduct this jury trial much less any jury trial next week. The continuance of the trial date will occur, but what I am going to do is reschedule this at the first possible date so that the disposition of detainer can be taken care of. I will tell you that the first possible date that I am looking at is the week of March the 22nd. . . .
>
> The weeks between now and then are otherwise scheduled from my perspective – and I don't say that to minimize the impact of the disposition of detainer. But March the 22nd is truly the first week that the Court has available where based on current knowledge we will have jurors available for this case.

The trial was thereafter rescheduled for March 22, 2021.

On March 9, 2021, Crosby filed a motion to dismiss arguing that the State had failed to bring him to trial within the time limitations mandated by the IAD. The trial court denied Crosby's motion, finding that there existed good cause for the continuance.

On March 23, 2021,[2] the case proceeded to trial. Crosby renewed his objection that the State had failed to bring him to trial within the timing requirements of the IAD, which was again denied by the trial court.

To support its prior and persistent offender allegations, the State offered exhibits establishing that Crosby had been found guilty of felony identity theft on July 18, 2017, as well as aggravated kidnapping and aggravated battery – both felonies - on May 31, 2019. Counsel for

---

[2] It is unclear from the record why the trial began on March 23 instead of March 22 as originally scheduled.

Crosby stated he had "no objection" to the admission of these exhibits and the trial court found Crosby to be a prior and persistent offender.

Crosby was found guilty of the lesser-included offense of kidnapping in the second degree and acquitted of the remaining two charges.[3] Based on his status as a persistent offender, the trial court sentenced Crosby to the enhanced term of nine-years imprisonment in the department of corrections. Crosby appeals his conviction and sentence.

## Discussion

Crosby raises two points on appeal. In Point I, he asserts that the trial court plainly erred in finding that he was a persistent offender, arguing that the findings of guilt entered on May 31, 2019, do not qualify under section 558.016, RSMo, to establish persistent offender status because those guilty findings were entered after the commission of the Jackson County offense. In Point II, Crosby claims that the trial court erred in denying his motion to dismiss, arguing that his trial was held outside the time limitations contained in the IAD without good cause. We address these points out of order.

## Point II

In Point II, Crosby asserts that the trial court erred in denying his motion to dismiss, claiming that his trial was held beyond the time limitations mandated by the IAD without good cause. We find no error.

### Standard of Review

"'We review *de novo* the trial court's application of the law in refusing to dismiss the [information or] indictments against [the defendant] under the IAD.'" *State v. Morrison*, 364 S.W.3d 779, 784 (Mo. App. W.D. 2012) (quoting *State v. Davis*, 210 S.W.3d 229, 233 (Mo. App.

---

[3] Prior to submission to the jury, the State dismissed the stealing count.

W.D. 2006)). "But '[t]o the extent the application of law is based on the evidence presented, we view the facts in a light most favorable to the judgment, giving deference to the trial court's factual findings and credibility determinations.'" *Id.* (quoting *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo. App. W.D. 2005)). When the trial court does not make findings of fact, we "'assume that all facts were found in accordance with the result reached.'" *State v. Stevenson*, 624 S.W.3d 420, 423 (Mo. App. W.D. 2021) (quoting *State v. Revels*, 13 S.W.3d 293, 297 (Mo. banc 2000)).

*Analysis*

The IAD, codified in section 217.490, RSMo, "is an agreement between forty-eight states, the District of Columbia, and the federal government that establishes uniform procedures for the orderly and cooperative disposition of criminal charges against a prisoner incarcerated in one jurisdiction and wanted by another jurisdiction that has lodged a detainer against the prisoner to respond to untried criminal charges in that jurisdiction." *Iowa v. Widmer-Baum*, 653 N.W.2d 351, 354 (Iowa 2002) (citation omitted). "'A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.'" *Morrison*, 364 S.W.3d at 784 (quoting *Carchman v. Nash*, 473 U.S. 716, 719 (1985)). Under the IAD, "the authorities of the state or jurisdiction with custody of the prisoner are required to inform the prisoner of the source and contents of the detainer and the prisoner's right to request a final disposition of the underlying charge." *Widmer-Baum*, 653 N.W.2d at 355; § 217.490, art. III, § 3, RSMo. Article III of the IAD governs requests for final disposition of pending charges made by the prisoner. § 217.490, art. III, RSMo.

In this case, Crosby properly invoked Article III of the IAD when he filed the necessary paperwork with Jackson County authorities requesting final disposition of his pending charges.[4] "The request by a prisoner under article III is considered to be a waiver of the right to contest extradition, as well as a consent to appear in any court necessary to effectuate the purposes of the IAD." *Widmer-Baum*, 653 N.W.2d at 355; § 217.490, art. III, § 5, RSMo. "Thus, article III is a voluntary procedure under the agreement where the prisoner gives up the right to contest extradition in return for an assurance that the charge will be resolved within a period of 180 days." *Widmer-Baum*, 653 N.W.2d at 356. Relevant to this appeal, Crosby's request submitted to Jackson County triggered the requirement that he "be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.]" § 217.490, art. III, § 1, RSMo; *see Gibbs v. State*, 359 S.W.3d 529, 533 (Mo. App. E.D. 2012).

There is no dispute that Crosby was brought to trial within 180 days of receipt of his paperwork by Jackson County authorities. Nevertheless, Crosby cites to Article IV of the IAD to argue that his trial was also required to commence "within one hundred twenty days" of his arrival in Missouri. In doing so, Crosby ignores the distinction between Article III (requests for disposition by the prisoner) and Article IV (requests made by the prosecuting authority) and that, by its plain language, the 120-day time limitation upon which he relies only applies to "proceeding[s] made possible by [ ] article [IV]" – which the present case is not.

---

[4] In addition to requesting the disposition of charges pending against him, the prisoner must submit to the receiving jurisdiction a "certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." § 217.490, art. III, § 1, RSMo.

Article IV of the IAD provides a separate procedure through which the jurisdiction in which the charges are pending can seek the transfer of the prisoner to stand trial. § 217.490, art. IV, RSMo. When prosecuting authorities request the transfer of a prisoner under Article IV of the IAD, and the request is granted,[5] "'trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state.'" *Gibbs*, 359 S.W.3d at 533 (quoting § 217.490, art. IV, § 3, RSMo). Thus, "unlike the trigger for the 180-day period under article III, the 120-day period under article IV does not begin to run until the prisoner actually arrives in the receiving state." *Widmer-Baum*, 653 N.W.2d at 356.

Crosby's effort to invoke the 120-day limitation in Article IV to his situation is misplaced as Article IV is only applicable to requests under the IAD to transfer a prisoner made by the authorities of the jurisdiction in which the charges are pending. See *Gibbs*, 359 S.W.3d at 533 (citing § 217.490, art. IV, § 1, RSMo) (the 120-day time limit in Article IV "applies when a state has requested custody of the prisoner in order to prosecute pending charges."). Indeed, unlike a request made by the prisoner under Article III, when the prosecuting jurisdiction initiates the request under Article IV, the prisoner can challenge the transfer, the request can be disapproved by the governor of the sending state, and, because of the distinct procedures attendant to Article IV requests, the process is subject to its own time limitations. In this case, the request under the IAD was made by Crosby, rendering Article IV of the IAD irrelevant to the analysis. As a result, Crosby's request was solely governed by the 180-day limitation contained in Article III.

---

[5] Under Article IV, once the receiving state makes a request for the prisoner, the trial court in the receiving jurisdiction must approve, record, and transmit the request to the sending jurisdiction. § 217.490, art. IV, § 1, RSMo. Once the paperwork has been received by the sending jurisdiction, "there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." *Id*.

Because Crosby's trial was commenced within 180 days of his request being received by Jackson County authorities, there was no violation of the IAD.[6]

Point II denied.

## Point I

In Point I, Crosby alleges that the trial court plainly erred in finding that he was a persistent offender and sentencing him accordingly, claiming that the trial court improperly relied on findings of guilt entered in 2019, after the commission of the offense in this case. Crosby further asserts that "[m]anifest injustice resulted because Mr. Crosby was sentenced to 9 years of imprisonment, a term exceeding that authorized for the Class D felony offense of second-degree kidnapping." We agree that the trial court plainly erred when it found Crosby to be a persistent offender and that the imposition of a sentence that exceeded the maximum range of punishment for a Class D felony constituted manifest injustice.

### Standard of Review

Crosby acknowledges that his counsel did not object to the trial court's finding that he was a persistent offender, and asks for plain-error review. "A claim not properly preserved for appellate review may be considered for plain error at our discretion." *State v. Bourrage*, 175 S.W.3d 698, 701 (Mo. App. E.D. 2005) (citing Rule 30.20).[7] "Under this standard, reversal requires a plain error affecting a substantial right that results in manifest injustice or miscarriage of justice." *Id.* (citing Rule 30.20). "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *Id.* (citing *State v. Johnson*, 150 S.W.3d 132, 136 (Mo. App. E.D. 2004)).

---

[6] Because Crosby's trial was commenced within the time limitations of the IAD, Crosby's argument concerning a lack of good cause to continue the trial beyond those timing requirements need not be addressed.

[7] Rule references are to the Missouri Supreme Court Rules (2020).

*Analysis*

Pursuant to section 558.016.1, RSMo, "[t]he court may sentence a person who has been found guilty of an offense to a term of imprisonment as authorized by section 558.011 or to a term of imprisonment authorized by a statute governing the offense if it finds the defendant is a prior offender. . . ." Additionally, "[t]he court may sentence a person to an extended term of imprisonment if: . . . [t]he defendant is a persistent offender . . . ." § 558.016.1(1), RSMo. "A 'prior offender' is one who has been found guilty of one felony." § 558.016.2, RSMo. "A 'persistent offender' is one who has been found guilty of two or more felonies committed at different times." § 558.016.3, RSMo. In order for the trial court to find that a person is a prior or persistent offender, "[t]he findings of guilt shall be prior to the date of commission of the present offense." § 558.016.6, RSMo.

Here, the State alleged and presented evidence establishing that Crosby had been previously found guilty of the following felonies in Kansas:

1. On or about May 31, 2019, defendant was found guilty of the felonies of Aggravated Kidnapping and Aggravated Battery in the District Court of Wyandotte County, Kansas in Court Case Number 2017-CR-001284;

2. On or about July 18, 2017, defendant pleaded guilty to the felony of Identity Theft in the District Court of Johnson County, Kansas under Court Case Number 15CR03030.

Crosby's counsel stated that he had "no objection" to the admission of the exhibits relating to Crosby's Kansas felonies and expressed no opposition to the trial court finding that Crosby was a prior and persistent offender. Crosby now argues that the trial court's determination that he was a persistent offender was in error because the findings of guilt from May 31, 2019, were entered after the date of the commission of the offense in the instant case. We agree. *See* § 558.016.6, RSMo; *see also State v. Sprofera*, 427 S.W.3d 828, 839 (Mo. App. W.D. 2004) (finding error when

9

the trial court found that the defendant was a prior offender relying on a conviction that occurred after the date of the crimes charged in that case).

Despite this clear error, the State asserts that review of this claim by this Court was waived, arguing that Crosby's counsel affirmatively stated "no objection" to both the admission of the exhibits concerning his prior Kansas felonies and to those findings of guilt providing a sufficient basis for the trial court to make a persistent offender finding. We are well aware of the oft-stated rule that "[a]n announcement of 'no objection' amounts to an affirmative waiver of appellate review of the issues," *State v. Anderson*, 294 S.W.3d 96, 100 (Mo. App. E.D. 2009) (citing *State v. Collins*, 188 S.W.3d 69, 77 (Mo. App. E.D. 2006)), however we do not read trial counsel's statement that he had "no objection" so broadly to reach both the admission of the exhibits and the trial court's persistent offender finding. The following exchange is relevant to this issue:

> [PROSECUTOR]: I will tender what has been marked as State's Exhibits nine and ten to the Court for consideration and those are the defendant's priors from Johnson County and Wyandotte County.
>
> THE COURT: State's Exhibits nine and ten will be received into evidence at this point in time solely for the purpose of this hearing. Whether or not they would be utilized in trial is a decision to be made at a later time so they'll be received for that purpose prior persistent. Any additional evidence or record from the State?
>
> [PROSECUTOR]: No, Your Honor.
>
> THE COURT: [Defense counsel], I understand no objection to the exhibits. I understand there's no objection to the basis for the Court finding Mr. Crosby prior and persistent offender; correct?
>
> [DEFENSE COUNSEL]: For that limited purpose no objection.

It is clear that trial counsel affirmatively expressed "no objection" to the admission of Exhibits nine and ten. However, Crosby's complaint on appeal does not concern the admission of those exhibits. Instead, the gravamen of his argument is that, regardless of their admission, those exhibits

10

do not support the trial court's finding that he was a persistent offender. Stated differently, the admission of the exhibits and the sufficiency of those exhibits to support the persistent offender finding are distinct issues and, after reviewing the brief colloquy on the topic, we are not convinced that trial counsel's response constituted an explicit affirmative acquiescence to anything beyond the admission of the exhibits. Indeed, the prefatory phrase "[f]or that limited purpose" lends support to this reading as it mirrors the earlier language used by the trial court relating to the narrow purpose for which the exhibits were being admitted. Thus, we will exercise our discretion and review this claim for plain error.[8]

It is undisputed that the 2019 findings of guilt were entered nearly two years after the commission of the offense in this case and, therefore, cannot support a persistent offender finding under section 558.016.6, RSMo.[9] This error is evident, obvious, and clear. Rule 30.20.

Moreover, the erroneous persistent offender finding permitted the trial court to sentence Crosby under the range of punishment for a class-C felony instead of the range for a class-D felony, which would have capped Crosby's punishment at seven years in the department of corrections. *See* § 558.011(3), RSMo (the range of punishment for a class C felony is between three- and ten-years imprisonment); § 558.011(4), RSMo (the range of punishment for a class D felony is "a term of years not to exceed seven years"). Crosby was sentenced to nine years in the department of corrections, a sentence that exceeded the upper-limit of the range of punishment for a class-D

---

[8] Nothing in this opinion should be construed as expressing a view as to whether plain error review would have been available to Crosby had we found that trial counsel's statement of "no objection" more broadly reached the trial court's finding that Crosby was a persistent offender. *See e.g. State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001) (although defense counsel "told the court expressly that he had no objection to the [verdict-directing] instruction[,]" holding that "[u]npreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur."); *State v. Cross*, 497 S.W.3d 271, 282 (Mo. App. E.D. 2016) ("Although Appellant waived this alleged error for appellate review, this Court can still review unpreserved claims for plain error"). *But see State v. Jones*, 619 S.W.3d 138 (Mo. App. E.D. 2021) (holding plain error review of prior and persistent finding waived).

[9] The finding of guilt entered in 2017 was sufficient under the statute to establish that Crosby was a prior offender, which alone removed sentencing from the jury. *See* § 557.036.4(2), RSMo.

felony. The imposition of this sentence constituted manifest injustice requiring reversal. *See State v. Nesbitt*, 299 S.W.3d 26, 30 (Mo. App. E.D. 2009) (finding manifest injustice when the trial court sentenced the defendant above the proper range of punishment based on an erroneous persistent offender finding); *State v. Starnes*, 318 S.W.3d 208, 215 (Mo. App. W.D. 2010) (same).

Point I granted.

## Conclusion

Crosby's conviction is affirmed. The trial court's finding that Crosby was a persistent offender is vacated and we remand for resentencing within the range of punishment for a class D felony.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

12